WRIGHT, FINLAY & ZAK, LLP
Dana Jonathon Nitz, Esq.
Nevada Bar No. 0050
Chelsea A. Crowton, Esq.
Nevada Bar No. 11547
7785 W. Sahara Ave, Suite 200
Las Vegas, NV 89117
(702) 475-7964; Fax: (702) 946-1345
dnitz@wrightlegal.net
ccrowton@wrightlegal.net
*Attorneys for Plaintiff/Counter-Defendant, Nationstar Mortgage, LLC*

**U.S. DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| NATIONSTAR MORTGAGE, LLC, a Delaware Company,<br><br>      Plaintiff,<br><br>      vs.<br><br>EQUITY TRUST COMPANY CUSTODIAN FBO Z130255, an Ohio Company; ASHWIN PATEL, an Individual,<br><br>      Defendants. | Case No.:  2:15-cv-01744-JAD-GWF<br><br>**PLAINTIFF/COUNTER-DEFENDANT, NATIONSTAR MORTGAGE, LLC'S, RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE REGARDING DISMISSAL FOR WANT OF SUBJECT-MATTER JURISDICTION** |
| EQUITY TRUST COMPANY CUSTODIAN FBO Z130255, an Ohio Company; ASHWIN PATEL, an Individual,<br><br>      Counter-Claimants,<br><br>      vs.<br><br>NATIONSTAR MORTGAGE, LLC, a Delaware Company,<br><br>      Counter- Defendant. | |
| EQUITY TRUST COMPANY CUSTODIAN FBO Z130255, an Ohio Company; ASHWIN | |

PATEL, an Individual,

   Third-Party Plaintiffs,

   vs.

VIRGILIA MUNOZ; and FRANK ORNELAS,

   Third-Party Defendants.

  Plaintiff/Counter-Defendant, Nationstar Mortgage, LLC (hereinafter "Nationstar" and "Plaintiff"), by and through its attorney of record, Chelsea A. Crowton, Esq., of the law firm of Wright, Finlay & Zak, LLP, hereby submits its Response to the Court's Order to Show Cause why the Case Should Not Be Dismissed for Want of Subject-Matter Jurisdiction.  This Response is based on the attached Memorandum of Points and Authorities, all papers and pleadings on file herein, and any oral or documentary evidence that may be submitted at a hearing on this matter.

DATED this 21st day of March, 2016.

                WRIGHT, FINLAY & ZAK, LLP
                 /s/ Chelsea A. Crowton, Esq.
                Dana Jonathon Nitz, Esq.
                Nevada Bar No. 0050
                Chelsea A. Crowton, Esq.
                Nevada Bar No. 11547
                7785 W. Sahara Ave., Suite 200
                Las Vegas, NV 89117
                *Attorneys for Plaintiff/Counter-Defendant,*
                *Nationstar Mortgage, LLC*

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.        LEGAL ARGUMENTS**

**A.  DIVERSITY JURISDICTION REMAINS INTACT**

**1.  Equity Trust is Not a REIT Subject to the <u>Americold</u> Holding.**

No basis exists for the Court to dismiss this case for lack of jurisdiction based on the guidelines set forth in <u>Americold Realty Trust v. Conagra Foods, Inc</u>., --- S.Ct.---, 2016 WL 854159 (Mar. 7, 2016).  Equity Trust is not a real estate investment trust, the type of entity addressed in the <u>Americold</u> decision.  Instead, per its public website, it is a qualified custodian of IRA accounts and assists individuals in managing and directing their retirement funds.

The <u>Americold</u> opinion only addressed the citizenship of real estate investment trusts ("REITs"). Created by the U.S. Congress in 1960, a REIT is a company that owns, and in most cases, operates income-producing real estate. REITs generally can own commercial real estate, ranging from office and apartment buildings to warehouses, hospitals, shopping centers, hotels and even timberlands. REITs were designed to provide a real estate investment structure similar to the structure mutual funds provide for investment in stocks.

Under U.S. Federal income tax law, a REIT is "any corporation, trust or association that acts as an investment agent specializing in real estate and real estate mortgages" under Internal Revenue Code section 856.  CCH 2008 U.S. Master Tax Guide, paragr. 2326, page 681. The rules for federal income taxation of REITs are found primarily in Part II (sections 856 through 859) of Subchapter M of Chapter 1 of the Internal Revenue Code. Because a REIT is entitled to deduct dividends paid to its owners or shareholders, a REIT may avoid incurring all or part of its liabilities for U.S. federal income tax. To qualify as a REIT, an organization makes an "election" to do so by filing a Form 1120-REIT with the Internal Revenue Service, and by meeting certain other requirements. The purpose of this designation is to reduce or eliminate corporate tax, thus avoiding double taxation of owner income. In return, REITs are required to distribute at least 90% of their taxable income into the hands of investors.

To qualify as a REIT under U.S. tax rules, a company must:

- Be structured as a corporation, trust, or association. Internal Revenue Code Sect. 856(a).

- Be managed by a board of directors or trustees. Internal Revenue Code Sect. 856(a)(1).
- Have transferable shares or transferable certificates of interest. Internal Revenue Code Sect. 856(a)(2).
- Otherwise be taxable as a domestic corporation. Internal Revenue Code Sect. 856(a)(3).
- Not be a financial institution or an insurance company. *See* Internal Revenue Code Sect. 856(a)(4). *See also* Internal Revenue Code Sect. 582(c)(2) (defining financial institutions for these purposes); Internal Revenue Code Sect. 801 *et. seq.* (defining insurance companies for these purposes).
- Be jointly owned by 100 persons or more. Internal Revenue Code Sect. 856(a)(5).
- Have 95 percent of its income derived from dividends, interest, and property income. Internal Revenue Code Sect. 856(c)(2).

In general, a REIT must also have at least 75% of its total assets invested in real estate and derive at least 75% of its gross income from rents or mortgage interest.

There is no indication that Equity Trust is a REIT, the only type of entity addressed by the Supreme Court in its opinion. Its website indicates that it is the "nation's leading provider of self-directed IRAs and 401Ks, with over 130,000 clients in all 50 states and approximately $12 billion of retirement plan assets under administration."[1] Essentially, a person, in this case, Ashwin Patel, can create an IRA account with the company. Equity Trust then manages the IRA account on Mr. Patel's behalf by investing in different options, some of which may include real estate, but are not required to be real estate. In fact, Equity Trust's website indicates it also will assist its customers in investing in private lending, tax liens, foreign currency, and precious metals.[2]

Equity Trust is not a REIT because it does not meet the criteria set forth by the IRS. For example, Mr. Patel's IRA account, as managed by Equity Trust, is not owned by more than 100 persons; is not required to have 95% of its income derived from dividends, interest and property

---

[1] See www.trustetc.com/about, checked on March 21, 2016, and attached hereto as **Exhibit 1.**
[2] See www.trustetc.com/investment-options, checked on March 21, 2016, and attached hereto as **Exhibit 1.**

1  income; is not required to have 75% of its assets invested in real estate; and is not required to
2  derive at least 75% of its income from rents or mortgage interest.
3      Accordingly, the citizenship of Equity Trust is not impacted by the Americold holding
4  and diversity jurisdiction remains intact.
5      **2. Request for Limited Discovery**
6      In the event the Court believes additional information is necessary to establish the
7  citizenship of Equity Trust, Nationstar requests 40 days to perform limited discovery on this
8  issue either through written interrogatories or a limited Rule 30(b)(6) deposition in order to
9  establish the nature of the company and its citizenship.
10 **B. EVEN IF THE COURT FINDS THAT DIVERSITY JURISDICTION HAS NOT
    BEEN MET IN THIS CASE, THE COURT STILL HAS THE ABILITY TO
11  EXERCISE JURISDICTION OVER THE CASE BECAUSE THE CASE IS SUBJECT
    TO FEDERAL SUBJECT MATTER JURISDICTION**
12
13     Even if this Court believes diversity jurisdiction is lacking, the Court should still not
14 dismiss this matter because the Complaint also asserts subject matter jurisdiction pursuant to 28
15 U.S.C. § 1331. The claims arise under the laws of the United States because the loan involved is
16 a FHA loan.  As an FHA loan, the mortgage interest in the property is held by a federal agency
17 and is a federal property that is protected by the Property Clause and Supremacy Clause of the
18 United States Constitution.
19     **1. HUD/FHA is not a Necessary Party to the Case.**
20     The fact that Nationstar is not the federal government does not bar it from asserting the
21 Property Clause as a basis to invalidate the sale.  Under the FHA program, lenders must take
22 action within federally proscribed deadlines after a default, and if they purchase the property at
23 foreclosure, they must convey title to HUD.  See Washington & Sandhill, 2014 WL 4798565 at
24 6. The operation of NRS Chapter 116 frustrates or impairs this process to borrowers, private
25 lenders and the federal government by affording associations priority for a nominal lien and a
26 quicker foreclosure avenue.  Again, it is the private lenders, like Nationstar, that fund the loans to
27 low income individuals with the understanding that it will be protected from default by
28 foreclosing and  being able to convey the property to HUD to recoup its losses.  Nationstar can

1  exercise this federally created right when NRS Chapter 116 permits an association to elevate a
2  nominal lien over the first Deed of Trust and foreclose in a fast and loose manner.
3    Furthermore, FHA/HUD is not a necessary or indispensable party to the case. The
4  primary relief requested in the Complaint is quiet title as between Nationstar and Defendants.
5  Nationstar is the recorded beneficiary under the first Deed of Trust. The Court can invalidate the
6  HOA sale or declare the first Deed of Trust as a surviving lien between Nationstar and
7  Defendants. Thus, complete relief can be accorded among those already parties. See FRCP
8  19(a)(1).
9    Nationstar is in privity with FHA in that Nationstar will convey the Property to FHA after
10 its foreclosure. Thus, any outcome as to whether the first Deed of Trust survived the HOA sale
11 would carry with it the doctrine of res judicata. See Five Star Capital Corp. v. Ruby, 124 Nev.
12 1048, 1054-55 (2008) (clarifying the doctrine of res judicata to include both issue and claim
13 preclusion, both of which require the same parties or their privies to be the same in both cases).
14 Accordingly, FHA is not a necessary party to adjudicate the quiet title claims based on Property
15 or Supremacy Clause issues.
16   Nationstar represents the interests of any investor or insured of the Munoz Loan.
17 Complete relief can be afforded to the existing parties in HUD's absence, and Defendants does
18 not attempt to demonstrate otherwise, failing to even use the term "complete relief" in its motion.
19 "In conducting the Rule 19(a)(1) analysis, the court asks whether the absence of the party would
20 preclude the district court from fashioning meaningful relief as between the parties." Disabled
21 Right Action Comm. v. Las Vegas Events, Inc., 375 F.3d 861, 879 (9th Cir. 2004) (emphasis
22 added); see also Confederated Tribes of the Chehalis Indian Reservation v. Lujan, 928 F.2d
23 1496, 1500, 1501 (9th Cir. 1991) (O'Scannlain, J., concurring in part and dissenting in part)
24 ("The relevant question for Rule 19(a) must be whether success in the litigation can afford the
25 plaintiffs the relief for which they have prayed."). Both Nationstar and Defendants seek an
26 adjudication of the right to own the Property. Nationstar alleges that the HOA, not HUD, caused
27 its injury by improperly attempting to foreclose on the Property. See Alto v. Black, 738 F.3d
28 1111, 1126-27 (9th Cir. 2013) (holding that tribe was not necessary party because "injury

complained of' was caused by a party and "not from the [absent party's] prior actions").[3]  Any judicial determination by the Court against Nationstar will affect HUD/FHA without the necessity of the federal entities to participate in the case.  Recently, Judge Jones ruled that HUD is not an indispensable party to a case wherein the bank asserts federal protections on behalf of HUD.[4]  The Court in Thunder Properties also implicitly concedes the standing of an assigned beneficiary to assert federal protections on behalf of HUD.  Given that Defendants have not even asserted, much less shown, that the Court cannot afford complete relief to the parties in the absence of HUD, Defendants have failed to satisfy the "complete relief" prong and its Rule 19(a) argument must be rejected.

More particularly, Judge James Mahan recently ruled in Saticoy Bay LLC, Series 7342 Tanglewood Park v. SRMOF II 2012-1 Trust, Case no. 2:13-cv-01199-JCM-VCF, Order, filed April 30, 2015.  There, Judge Mahan first determined that "a homeowners' association foreclosure sale under Nevada Revised Statute 116.3116 may not extinguish a federally-insured loan." Id. at 6.  Then he ruled, over the buyer's contention that the Nevada statute is not preempted by the property and supremacy clauses in this case because HUD is not a party to this action, "[T]he absence of HUD from this suit, and any arguments turning on federal ownership of the property, do not dictate the court's holding in this case." Id. at 7.  He then rejected the buyer's standing argument: "Defendant is entitled to argue that state law is constitutionally preempted whether or not the government is a party to the case." Id.  Then, he rejected the buyer's argument that that defendant lacked proof that the instant loan was insured by the FHA at the time of foreclosure, despite the fact that the assignment of the deed of trust to HUD after the date of the HOA foreclosure sale; the assignment still evidenced a federal interest in the property because "[s]uch a conveyance comports with regulations governing FHA-insured loans. See 24 C.F.R. § 203.355(a)." Id.  Accordingly, he concluded, "Because the evidence supports a

---

[3] Defendants also has identified no action that HUD might have to take to conform to any ruling of this Court-and neither can Nationstar-but any such action would not change the analysis.  See, e.g., Alto, 738 F.3d at 1127 (holding that district court "may assume that [governmental entity] will then abide by the . . . decision" of the district court).

[4] See Thunder Properties, Inc. v. Wood, 2015 WL 1926768 (D. Ct. Nev. 2015).

finding that the property was federally insured at the time of the HOA foreclosure sale, the court concludes that the HOA foreclosure sale at issue was invalid," and found that that the homeowners' association sale in the instant case was void. Id. at 7-8. Thereupon, he granted the lender's countermotion for summary judgment and denied the buyer's motion for summary judgment. This Court should apply Judge Mahan's sound reasoning and retain jurisdiction over the case. Id. at 8.

Judge Mahan's conclusion is consistent with other authority holding claims under the Supremacy Clause and the Property Clause do not "belong" to HUD or the United States. Nor is Nationstar "rais[ing] such claims on behalf of HUD." Id. Rather, Nationstar is asking this Court "to say what the law is," a function that is "emphatically the province and duty of the judicial department." Marbury v. Madison, 5 U.S. (1 Cranch) 137, 177 (1803). Private litigants routinely ask courts to apply principles of the Supremacy and Property Clauses of the U.S. Constitution to hold that a state law is preempted, without the United States or one of its agencies as a party. See, e.g., Crosby v. Nat'l Foreign Trade Council, 530 U.S. 363 (2000) (holding that Massachusetts law was invalid even though neither United States nor any agency thereof was named as party); Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta, 458 U.S. 141 (1982) (holding that Federal Home Loan Bank Board regulations preempted conflicting state regulations though Board was not party to suit). Indeed, this Court has decided questions under the Supremacy Clause notwithstanding the fact that neither the United States nor any agency thereof was a party. See, e.g., Insco v. Aetna Health & Life Co., 673 F. Supp. 2d 1180 (D. Nev. 2009). Cases under the Property Clause are similarly litigated without the United States named as a formal party. See Cal. Coastal Comm'n v. Granite Rock Co., 480 U.S. 572, 593-94 (1987) (holding certain California regulations not preempted by Property Clause without United States or any agency thereof named as party); S. Dakota Mining Ass'n v. Lawrence Cnty., 155 F.3d 1005, 1011 (8th Cir. 1998) (holding local ordinance preempted by Property Clause and Supremacy Clause, notwithstanding that neither United States nor any agency thereof was a party); Ventura Cnty. v. Gulf Oil Corp., 601 F.2d 1080, 1083 (9th Cir. 1979) (holding county permitting scheme preempted by Property Clause notwithstanding that neither United States nor any agency thereof

was a party).

Defendants cannot be prejudiced in this action by its lack of "recourse" against HUD. In the herein quiet-title action, the Court will fully adjudicate all rights and title to the Property, consistent with federal law and the U.S. Constitution. If Nationstar does not prevail, its "recourse" will be an appeal, not a second bite at the apple in another suit against HUD. Neither HUD nor the parties to this action will be prejudiced, and Defendants do not argue that HUD will be prejudiced. The judgment will be adequate, insofar as a quiet-title action will necessarily adjudicate all rights and title to the Property. And Nationstar can have no other recourse other than to defend this suit in part by asserting that the Nevada statute under which Defendants claims to have taken title is preempted by the Supremacy and Property Clauses.

### 2. Nationstar has standing to assert the Preemptive Effect under the Supremacy and Property Clauses.

Nationstar has standing to challenge the preemptive effect of NRS Chapter 116. Indeed, frequently the servicer will be the beneficiary of record and the only party notified that a third party is seeking to extinguish a lender's property interest. In contrast, HUD—as the insurer in a situation in which the time for filing an insurance claim already had lapsed—faced no realistic possibility of any loss in Freedom Mortgage. See Freedom Mortgage Corp. v. Las Vegas Development Group, LLC, 2:14-cv-01928 *9 (D. Nev. May 19, 2015). In Sprint Communications Co. v. APCC Services, Inc., 554 U.S. 269 (2008), the Supreme Court held (5-4) that a third-party assignee has standing to litigate on behalf of its assignor, even if the assignee has no interest in the litigation aside from the fee it is paid for its service. Id. at 271-72. The assignees in Sprint were collection agencies pursuing claims assigned to them; if successful, the collection agencies would remit any recovery to their assignors. Id. Sprint holds that courts "have always permitted the party with legal title alone to bring suit," and that "[l]awsuits by assignees, including assignees for collection only, are cases and controversies of the sort traditionally amenable to, and resolved by, the judicial process." Id. at 285 (citation and internal quotations marks omitted). In reaching this conclusion, the Court rejected any concerns regarding prudential standing, concluding that prior cases imposing limitations "where a plaintiff

has sought to assert the legal claims of third parties," <u>Id</u>. at 289, are inapposite. "These third-party cases," the court explained, "are not on point" because "[t]hey concern plaintiffs who seek to assert not their own legal rights, but the legal rights of others." <u>Id</u>. at 290. By contrast, the plaintiffs in <u>Sprint</u> were "suing based on injuries originally suffered by third parties" that were later assigned to them. <u>Id</u>. Thus, the plaintiffs in Sprint were "assert[ing] what [we]re, due to the transfer, legal rights of their own"; in other words, they were "asserting first-party, not third-party, legal rights." <u>Id</u>.

Similarly, in <u>CWCapital Asset Mgmt., LLC v. Chicago Properties, LLC</u>, 610 F.3d 497 (7th Cir. 2010), the court applied the above principles to a servicer's relationship with a trust and found that the servicer had standing to bring suit on behalf of the trustee:

> The trust holds legal title to the mortgages. The servicer is the trust's collection agent. The delegation to it is comprehensive: the servicer "shall . . . have full power and authority, acting alone, to do or cause to be done any and all things in connection with the servicing and administration which it may deem necessary or desirable." The servicer is much like an assignee for collection, who must render to the assignor the money collected by the assignee's suit on his behalf (minus the assignee's fee) but can sue in his own name without violating Rule 17(a)." <u>Id</u>. at 500-501 (citing <u>Sprint</u>, 554 U.S. at 269.).

Indeed, the court concluded that "[t]here is no doubt about Article III standing in this case; though the plaintiff may not be an assignee, it has a personal stake in the outcome of the lawsuit because it receives a percentage of the proceeds of a defaulted loan that it services." <u>Id</u>. at 501; see also <u>Mortgage Electronic Registration Systems, Inc. v. Bellistri</u>, No. 4:09-cv-731, 2010 WL 2720802 (E.D. Mo. July 1, 2010) (finding "MERS had a legal right to file suit to foreclose the mortgage . . . . the right to file suit is a 'a substantial property right.'" (quoting <u>Kinsella v. Landa,</u> 600 S.W.2d 104, 107 (Mo. Ct. App. 1980))

The same basic principles outlined in <u>Sprint</u> and <u>CWCapital</u> can be applied to analyzing whether Plaintiff has standing to raise the HUD defense in the Nevada HOA cases. Just as the parties who suffered the injury contracted with the collection agencies in <u>Sprint</u> and the servicer in <u>CWCapital</u>, HUD has contracted with the original lender under the deed of trust and via the Assignment to Nationstar. Indeed, HUD has contractually provided Nationstar with full authority to protect the HUD's interests, including, if necessary, foreclosing on the deed of trust

for which the servicer often is the beneficiary and remitting any value recovered to HUD. Nationstar thus arguably have standing to raise any arguments HUD could raise just as the collection agencies in Sprint and CWCapital had full authority to pursue claims on behalf of the assignors of those claims. And, also as in Sprint, the claims at issue in the Nevada HOA cases are those of the servicers; the servicers' exercise of powers contractually assigned to them accordingly is not subject to the requirements of prudential standing. This contrasts sharply with Freedom Mortgage, where the plaintiff conceded that it, and not HUD, was the real party in interest. Slip Op. at 7. Nationstar has a close relationship with HUD by virtue of the fact that, as discussed above, they are contractually bound to protect the property interests of HUD. Second, Nationstar is making payments to HUD pursuant to the terms of the HUD insurance. Therefore, for the same reasons that servicers are able to bring suit under Sprint, as discussed above, Nationstar falls within the zone of interests protected by the preemption rule.

Therefore, this Court has subject matter jurisdiction under multiple grounds and dismissal is unwarranted in this case.

## II.   CONCLUSION

Based on the above, Nationstar requests the Court find that subject matter jurisdiction exists, or in the alternative allow limited discovery on this issue.

DATED this 21st day of March, 2016.

>                     WRIGHT, FINLAY & ZAK, LLP
>                     　　　/s/ Chelsea A. Crowton, Esq.
>                     Chelsea A. Crowton, Esq.
>                     Nevada Bar No. 11547
>                     7785 W. Sahara Ave., Suite 200
>                     Las Vegas, NV 89117
>                     *Attorneys for Plaintiff/Counter-Defendant,*
>                     *Nationstar Mortgage, LLC*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I am an employee of WRIGHT, FINLAY & ZAK, LLP; that electronic service of the foregoing **PLAINTIFF/COUNTER-DEFENDANT, NATIONSTAR MORTGAGE, LLC'S, RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE REGARDING DISMISSAL FOR WANT OF SUBJECT-MATTER JURISDICTION** was made on the 21st day of March, 2016, to all parties and counsel as identified on the Court-generated Notice of Electronic Filing.

                                    /s/ Chelsea A. Crowton
                          An Employee of WRIGHT, FINLAY & ZAK, LLP